By the Court.
Authority is conferred by Section 3636, General Code, upon municipal corporations to regulate the erection, repair and alteration of buildings, to regulate their sanitary condition and provide for their inspection, and for the repair and destruction, if necessary^ of insecure, unsafe and dangerous bhildings.
The city of Cincinnati acting under the authority thus granted has in its code of ordinances provided in Section 487 for the inspection and condemnation of unsafe buildings. The power thus conferred is a necessary exercise of the police power of the state, under the maxim salus populi suprema lex, which authorizes and commands destruction of private property to save human life, to protect public health, to preserve property and to safeguard the public safety. But the property must constitute a nuisance, and the peril be imminent, to warrant such summary action as its destruction. The exercise of such power in its nature must be arbitrary, but it arises from necessity and must always be distinctly for the public welfare and with full recognition of the inviolate *62 ness of private property as guaranteed in the Bill of Rights (Section 19, Article I of the Constitution).
In this case the plaintiff, Thomas V. Maxedon, seeks to enjoin the building commissioner from demolishing and taking down a frame dwelling known as No. 4352 Badgeley road, and from interfering with its alteration and repair under a building permit which has already, been issued by the commissioner for that purpose, alleging that the order to destroy said building is an abuse of discretion on the part of the defendant, and an unnecessary invasion of plaintiff’s property rights.
It is conceded that such permit was duly issued, but it is claimed that plaintiff has been so slow and dilatory in proceeding with the work that there is no reasonable expectation that he will complete the work and protect 'the lives and health of his tenants and others going into said building, and that the delay is constantly augmenting the risk and adding to the danger.
The evidence shows without dispute that -the stairway and the annex, or that part of the building in which the stairway is located, are in such an unsafe condition that they should be at once .rebuilt or repaired so as to be entirely safe. This is part of the work contemplated by the owner and covered by the permit already issued. It 'appears that the foundation and sills of the main part of the structure are 'solid and sufficient for safety, but repairs are needed for the windows, weatherboarding, roof añd other parts of the building, which we understand are covered by said building *63 permit, as well as new doors and windows for the basement, and drainage and toilet facilities.
The court will not undertake to decide, as an economic proposition, whether it would be more desirable, as the building commissioner suggests, for the owner to take the present structure down to the foundation and use the material for the erection of a one-story structure upon the foundation, or for the. owner to repair and rebuild the present two-story structure according to his present plans. That is a matter in which the owner of the property is entitled to act upon his own choice and judgment, so long as he pays due regards to the rights of the public to secure proper safety and sanitary conditions. Even though it might be entirely unwise from a financial view for the owner to undertake to preserve so much of his building as is admitted to be safe, he is acting within his rights in so doing, so long as he does not imperil the lives or property of others by maintaining the structure so rebuilt.
The house in question is set back from the street and is located so far from the nearest building that no claim is made of any danger to other buildings as a fire hazard. The only warrant for public interference with the plans and operations of the owner is to secure public safety an'd health of those occupying the property. Desirable as it might be from an aesthetic point of view to have public control of private building, the law does not permit an invasion of private rights on such grounds.
The delay of plaintiff in completing his rebuilding operations under his permit seems almost sufficient *64 to exhaust the patience of the building department, and'to provoke drastic measures to bring matters to a culmination. But it must be remembered that the delay has operated to the loss of the owner, who attempts to justify himself by undertaking to show the failure of others to perform contracts made with him for sundry parts of the work. He also shows difficulty in bringing in materials because of a destroyed bridge, and the condition of the unimproved street on which his property fronts.
Under all the circumstances of the case the court finds that the plaintiff should be given an opportunity to repair and rebuild his house in accordance with his permit, during the present building season, on condition that he proceed without delay to reconstruct and repair the stairway to the satisfaction of the building commissioner, making same safe for his tenants while the work progresses; or, that he have said building vacated until such stairway is so improved; and that all said work under such permit be completed by November 1, 1917; and that further proceedings under the notice of the building commissioner be restrained until further order of the court; and a decree may be taken accordingly.

Decree accordingly.

Jones, Gorman and Hamilton, JJ., concur.